IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CALEB BRADLEY,

      Plaintiff,

v.                                          Case No. 1:25-cv-00030-SMD-LF

AMAZON,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter comes before the Court on Defendant Amazon.com Services LLC's ("Amazon") motion for summary judgment, filed January 22, 2026. Doc. 74. Mr. Bradley responded to the motion, Doc. 75, and Amazon filed a reply, Doc. 76. The Honorable Sarah Davenport referred this case to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 47. Having reviewed the parties' submissions and the applicable law, I recommend that the Court GRANT Amazon's motion for summary judgment (Doc. 74) for the reasons discussed below.

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties must support their assertions about the existence or non-existence of undisputed material facts with citations to the record or by demonstrating that the opposing party "cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving

party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020). When considering a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016).

## DISCUSSION

### I.    Undisputed Material Facts

Amazon provided a statement of undisputed material facts. Doc. 74 at 2–10. Mr. Bradley purports to dispute some of these facts, Doc. 75 at 2–7, but he does not cite to evidence in support of his own assertions of fact (with limited exceptions, including Exhibits 1 and 2, which I will discuss below). Federal Rule of Civil Procedure 56(c) makes clear that a party "must support" its assertions or disputes of material fact with citations to record materials or allegations that the opposing party's cited materials are inadequate. The Court informed Mr. Bradley of his obligation to become familiar with and comply with the Federal Rules of Civil Procedure. Doc. 5 at 1–2. Therefore, his failure to support many of his disputed facts with record evidence means that these disputes are not "genuine" disputes of material fact because he has not pointed to evidence that a reasonable jury could use to find in his favor.

Accordingly, the undisputed material facts in this case are as follows. Amazon hired Mr. Bradley, a Black man, on October 4, 2021, as a Fulfillment Associate. Undisputed Material Fact ("UMF") No. 1.[1] Mr. Bradley received and acknowledged onboarding documents including those prohibiting discrimination, harassment, and retaliation in the workplace and instructing employees on how to report this conduct. UMF Nos. 2–3. These documents also included

---

[1] The Undisputed Material Facts appear at pages 2 through 10 of Amazon's Motion for Summary Judgment (Doc. 74).

standards of conduct and examples of infractions that could result in corrective action, "up to and including termination." UMF No. 4. Such infractions include fighting in the workplace, sexual harassment, violation of security policies, and abusive and vulgar language. UMF Nos. 5–8. Mr. Bradley also acknowledged Amazon's policies prohibiting the use of other associates' badges to enter access-controlled areas. UMF No. 9.

In 2022, Mr. Bradley became a learning ambassador, "with additional duties of training new associates, in addition to his regular associate duties." UMF No. 10. He "didn't really consider it much of a promotion even though it technically is" because it did not come with a pay raise. Doc. 74-10 at 5; UMF No. 11.

On May 11, 2022, Mr. Bradley "requested time off work for an injury to his shoulder, which he claimed had occurred in March." UMF No. 12. His doctor recommended that he take off from work until May 18, 2022, and Amazon granted Mr. Bradley a medical leave of absence through this period. UMF Nos. 13–14. Mr. Bradley, however, did not return until June 2, 2022, because he disagreed with the doctor's assessment. UMF No. 15. He testified that in communications with the Employee Relations and worker's compensation team, he felt that he was treated like he was incompetent and a liar. UMF Nos. 16–17.[2] Mr. Bradley testified that around the same time, Amazon Security followed him "to see what he put in the trash," but he did not know if this action related to his race. UMF No. 19. He also testified that another associate, Juan, asked him, "What would you do if I called you the n word?," but Juan did not

---

[2] UMF Nos. 16–17 also include statements by Mr. Bradley regarding his lack of evidence that this unsatisfactory treatment had anything to do with his race. However, Mr. Bradley attaches his Exhibit 1, Doc. 75 at 10–13, as evidence that his personnel file included a photograph of him that the teams at Amazon could have seen, which would make them aware that he is Black. I therefore recommend considering the issue of whether Amazon employees on the Employee Relations and worker's compensation teams knew Mr. Bradley was Black to be in genuine dispute.

actually use any slur. UMF No. 20. He also "heard an associate from Germany telling another associate that in Germany, it was acceptable to use the n-word to identify people." UMF No. 21 (internal quotation marks omitted). Mr. Bradley did not report any of these incidents to anyone. UMF No. 22.

On January 13, 2023, Mr. Bradley entered an area of Amazon's facility for which he did not have permission; someone else used their badge to let him in. UMF No. 26–27. Amazon issued Mr. Bradley a written warning about this incident. UMF No. 28; Doc. 74-8 at 2.

On February 24, 2023, Mr. Bradley had an argument with a coworker in the breakroom regarding the volume of the television. UMF Nos. 30–33. The other employee said something that Mr. Bradley could not hear completely but which included the words "a Black man." UMF No. 34; Doc. 74-11 at 2. Mr. Bradley referred to the other employee as a "motherfucker." UMF No. 35; Doc. 74-11 at 2. Amazon's Human Resources department investigated the incident and "substantiated both Plaintiff 'cussing' and [the other employee] making 'derogatory racial remarks.'" UMF No. 36; Doc. 74-11 at 3. Both parties were issued final written warnings for their parts in the argument. UMF Nos. 38–39; Doc. 74-12 at 2; Doc. 74-11 at 3. Because of this write-up, Mr. Bradley was removed as a learning ambassador. UMF No. 41.

In August 2023, Mr. Bradley was reported twice to Human Resources, by two different female employees, for sexual harassment. UMF Nos. 42–44. Upon investigation, one report resulted in a violation and the other did not. UMF Nos. 43, 48–49. Mr. Bradley received a second final written warning for "harassing behavior." UMF No. 50. Meanwhile, Mr. Bradley was disciplined three times in September and October 2023 for failing to meet productivity expectations. UMF Nos. 51–57. On October 18, 2023, Mr. Bradley was fired. UMF No. 58; Doc. 74-19 at 2.

Mr. Bradley filed the present case asserting fraud, negligence, retaliation in violation of Title VII, discrimination in violation of Title VII, a hostile work environment, and wrongful termination. Doc. 1 at 7. The Court granted Amazon's motion for judgment on the pleadings, ruling in Amazon's favor on the fraud and negligence counts. Docs. 79, 82.

## II.    Analysis

### A.  Retaliation (Count III)

Mr. Bradley claims that he faced retaliation in violation of Title VII because he was demoted and because he was moved "to areas where, [sic] duties, workloads, and safety conditions changed." Doc. 1 at 7. He allegedly reported "fraud" to Amazon's human resources department and faced a demotion, a write-up, and another transfer with minimal training. *Id.* at 12. As an initial matter, the Court notes that reporting "fraud" is not sufficient to establish retaliation under Title VII; Title VII retaliation claims can only exist when an employee faces retaliation for engaging in "protected opposition to discrimination." *Fassbender v. Correct Care Sol'ns*, 890 F.3d 875, 890 (10th Cir. 2018). Even if Mr. Bradley engaged in protected opposition to discrimination—a matter he has not alleged sufficiently—his claim still cannot succeed for the reasons discussed below.

To analyze a Title VII discrimination claim, the Court applies the burden-shifting framework articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 782, 802–04 (1973). *Fassbender*, 890 F.3d at 890. First, the plaintiff bears the burden of demonstrating a prima facie case of retaliation. *Id.* For the purposes of this motion only, Amazon assumes that Mr. Bradley can do so. Doc. 74 at 16. Next, the burden shifts to the employer "to articulate a legitimate, non-retaliatory reason for its actions." *Walkingstick Dixon v. Okla. ex rel. Regional Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1334, 1339–40 (10th Cir. 2025). Here,

Amazon has articulated legitimate and non-retaliatory reasons for its discipline and ultimate termination of Mr. Bradley: violations of company policy in the form of using profanity against a coworker, sexual harassment, entering an area his badge did not permit him to enter, and repeated instances of low productivity. Doc. 74 at 17.

Because Amazon has articulated these reasons, the burden shifts back to Mr. Bradley to demonstrate that those reasons were pretextual. *Walkingstick Dixon*, 125 F.4th at 1334, 1339–40. Mr. Bradley argues that 1) he received permission from his team lead and assistant manager to enter the area his badge did not permit him to go, Doc. 75 at 2; 2) that in the investigation of the fighting allegations, the other employee's claims were investigated while Mr. Bradley's were ignored, *id.* at 4; 3) that Amazon "[c]onceal[ed] statements, write ups, [and] logs, and show[ed] a bias" in firing him, *id.* at 5; and 4) that the sexual harassment investigation minimized and ignored "how horseplay, slurs, and others['] actions . . . provoked him," *id.*

As an initial matter, the Court notes that Mr. Bradley does not dispute that he did not meet productivity expectations, that Amazon automatically issues discipline to associates in the bottom five percent of productivity, and that he received three productivity write-ups between September 7, 2023, and October 13, 2023. *See* UMF Nos. 51–53, 57; Doc. 75 at 5 (objecting to UMF Nos. 50, 55, and 58, not 51–53 or 57). He has provided no evidence at all regarding any concealed statements, write-ups, or logs pertaining to his productivity issues. He has admitted that the productivity write-ups were automatic. UMF No. 52. Thus, his claim that these write-ups were retaliatory, Doc. 75 at 6, falls flat because they were issued without discretion to any employee whose productivity was in the bottom five percent.

Further, Mr. Bradley's arguments in favor of pretext are insufficient to carry his burden. Regarding his badge usage, the evidence shows that Mr. Bradley received a first written warning

for entering "the TOM yard" without correct permissions. Doc. 74-8 at 2. This warning took place in January 2023. Mr. Bradley did not report his allegations of being discriminated against until February and September 2023. UMF Nos. 40, 54. This incident therefore could not have occurred in retaliation for Mr. Bradley's allegations of discrimination.[3]

Mr. Bradley's argument about the fighting allegations is insufficient. He argues that the other employee's claims were investigated and Mr. Bradley's were ignored, but the evidence demonstrates that this is not true: both Mr. Bradley and the other employee received final written warnings, and the other employee was specifically disciplined for making derogatory racial remarks. Doc. 74-11 at 2–3. Mr. Bradley has provided no evidence that his claims were ignored while the other employee's claims were investigated.

With regard to the sexual harassment allegations, Mr. Bradley's characterization of the record is unsupported. In fact, of the two sexual harassment allegations against Mr. Bradley, one was specifically found *unsubstantiated* in part because "evidence indicated [that flirtatious behavior by Mr. Bradley] was welcomed and consensual for an undefined period of time." Doc. 74-20 at 3. Mr. Bradley provided screenshots of text messages to the investigator demonstrating that the claimant had expressed consensual romantic interest in Mr. Bradley and given permission for him to kiss her. *Id.* The second investigation, which involved a different claimant and was substantiated, was investigated by the same HR investigator, Jen Gnecco, during approximately the same period of time as the first one. Doc. 74-20 at 5 (Jen Gnecco investigated during early September 2023 and found claim unsubstantiated); Doc. 74-13 at 7–8 (Jen Gnecco

---

[3] Mr. Bradley refers to "retaliation after the workers comp complaints." Doc. 75 at 6. He has provided no evidence that he filed complaints of racial discrimination that occurred in the worker's compensation application process. Retaliation under Title VII refers to retaliation against an employee who opposes violations of Title VII. *Walkingstick Dixon*, 125 F.4th at 1339. It is not a catch-all cause of action for whistleblower allegations unrelated to Title VII violations.

investigated during early September 2023 and found claim substantiated). Mr. Bradley has put forth no evidence showing how one investigation was unbiased but the second, concurrent investigation by the same investigator was biased against him.

In short, Mr. Bradley has not demonstrated pretext. He therefore fails to meet his burden under the *McDonnell Douglas* framework. I recommend GRANTING Amazon's motion for summary judgment on his retaliation claims.

## B.  Discrimination (Count IV)

Mr. Bradley claims that he faced discrimination in violation of Title VII. Doc. 1 at 14. He argues that he received "harsh punishments, demotions, and reassignments" that others did not suffer, citing the example of a "white employee" who told Mr. Bradley that he "got into an altercation with another employee similar to my situation" but got a "paid suspension" and was not "demoted or moved after," unlike Mr. Bradley. *Id.* He also discusses an instance in which "a Latina employee . . . tried to report white employees breaking company policies" and was ultimately fired. *Id.* Finally, he states that the sexual harassment investigation he faced was based on accusations from white employees and that he "didn't get a proper investigation." *Id.*

To analyze a Title VII discrimination claim, the Court applies a burden-shifting framework articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 782, 802–04 (1973). Under this framework, the plaintiff bears the initial burden of demonstrating a prima facie case of discrimination. *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). If the plaintiff succeeds, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" it took the action it did. *Id.* If the defendant carries this burden, the burden shifts one last time to the plaintiff "to prove by a preponderance of the evidence that the

legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal citation omitted).

Mr. Bradley first bears the burden of demonstrating a prima facie case of discrimination. If he does not, the analysis ends. Many variations of this test exist to account for different circumstances, but generally speaking, a prima facie case of discrimination requires 1) that the plaintiff is a member of a protected class; 2) that the plaintiff was qualified and satisfactorily performing his job; and 3) that he was terminated under circumstances giving rise to an inference of discrimination." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Here, Mr. Bradley is a member of a protected class because he is a Black man. UMF No. 1. However, he fails to satisfy the second prong of the test: that he was qualified and satisfactorily performing his job. The undisputed material facts demonstrate that in many respects, Mr. Bradley did not perform his job in a satisfactory manner. He received an allegation of sexual harassment that was substantiated, UMF No. 49–50; he got into an argument on the job with a fellow employee in which he used profanity in violation of company policy, UMF No. 38; and his productivity was repeatedly low enough to prompt automatic disciplinary action, UMF Nos. 51–53, 57. Therefore, there is no need to proceed with the *McDonnell Douglas* test because Mr. Bradley has not demonstrated a prima facie case of discrimination.

In his complaint, Mr. Bradley compares the discipline and write-ups he faced to conduct that he has heard about happening to white employees. Doc. 1 at 14. Disparate treatment based on race requires Mr. Bradley to show "(1) that he is a member of a racial minority, (2) that he suffered an adverse employment action, and (3) that similarly situated employees were treated differently." *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). Here, Mr. Bradley has *alleged* that a similarly situated white employee was treated differently,

Doc. 1 at 14, but he has brought no evidence in support of this allegation. At the summary judgment stage, this is insufficient. *See* FED. R. CIV. P. 56(c).

Accordingly, I recommend that the Court grant summary judgment in Amazon's favor on Mr. Bradley's discrimination claim.

### C.  Hostile Work Environment (Count V)

Mr. Bradley alleges that he experienced a hostile work environment. Doc. 1 at 15. Analysis of a hostile work environment claim considers whether Mr. Bradley's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008). To hold an employer liable for failure to respond to racial harassment in a reasonable manner, a plaintiff must demonstrate that the employer had actual or constructive knowledge of the racial harassment. *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000). An employer has actual knowledge of harassment if the plaintiff has reported the harassment to management-level employees, and an employer has constructive knowledge "where the pervasiveness of the harassment supports an inference of employer knowledge." *Id.* Here, Mr. Bradley has not provided evidence that his allegedly hostile work environment met these requirements.

As an initial matter, the evidence in this case does not support an inference of employer knowledge for any of the incidents Mr. Bradley did not report. He alleges that security followed him around one day but that he was not sure if it had to do with race, that his associate asked him what he would do *if* the associate used a slur (which the associate did not), and that he overheard a conversation about racial slur usage in Germany. UMF No. 19–22. These incidents, while potentially uncomfortable if true, include no accompanying facts to suggest that Amazon

management knew about them. They also do not rise to the level of severity or pervasiveness necessary to establish a hostile work environment claim. *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1223 (10th Cir. 2015) (to establish a hostile work environment, "the plaintiff must show more than a few isolated incidents of racial enmity").

Regarding the reported incidents, Mr. Bradley's claim fares no better. Evidence supports that the following instances of alleged racism were reported to Amazon: 1) that Mr. Bradley was angrily called a "Black man" by a coworker during an argument, and 2) that Mr. Bradley believed the sexual harassment allegations against him were racially discriminatory and reported them. UMF Nos. 40, 54. Amazon disciplined the coworker who made the racial comment. UMF No. 39; Doc. 74-11 at 3. And when Mr. Bradley voiced his belief that he was being discriminated against, he was directed to call Amazon's ethics hotline, which he did not do. UMF Nos. 54–55; Doc. 74-10 at 24. "Plaintiff bears the burden of presenting evidence establishing a genuine issue of fact that the employer's response [to the racial harassment] was unreasonable." *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000). Here, Mr. Bradley has not brought *evidence* that Amazon's discipline of his coworker who made a racial comment was unreasonable—for example, evidence that this coworker continued to harass him, undeterred by the discipline Amazon imposed. Similarly, he has not brought evidence that it would have been futile to call Amazon's ethics hotline to report his belief that the sexual harassment investigation was racially discriminatory. He stated his belief that if he had "to go through another department with Amazon," the people he contacted "are just going to conceal things, lie, make it seem like . . . this is nothing, no, it's not a big deal," because that was what he felt he experienced with his worker's compensation proceedings. Doc. 74-10 at 24–25. But he has brought no evidence that the same individuals work in both the workers' compensation department and the ethics hotline,

11

that both parts of the company followed the same guidelines in addressing complaints by employees, or that he ever experienced negative interactions with the ethics hotline in the past. Therefore, he has provided no basis on which a reasonable jury could conclude that Amazon's response to his allegations of harassment was unreasonable.

Accordingly, I recommend that the Court grant summary judgment in Amazon's favor on Mr. Bradley's hostile work environment claim.

### D. Wrongful Termination (Count VI)

Mr. Bradley claims that he experienced wrongful termination because Amazon "fir[ed] [him] based on lies," led "biased investigations and made a pretextual decision." Doc. 1 at 7. Wrongful termination in New Mexico requires a plaintiff to demonstrate "that the employer violated a clear mandate of public policy by discharging the employee." *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 11, 872 P.2d 852, 855, 117 N.M. 434, 437. It is not simply a general claim to punish an employer for unwisely or even unfairly terminating an employee. Mr. Bradley's supporting facts outline his concerns that the sexual harassment investigations against him were procedurally unfair: that he was not given adequate information throughout the process, that there were errors and changes in documentation, and that his statements were not taken. Doc. 1 at 17. But he does not allege that he was fired for doing something that public policy encourages or refusing to do something required by his employer that public policy condemns. *See Andreas v. Nw. Mut. Life Ins. Co./Nw. Mut.*, No. 1:07-cv-00312-JC-ACT, 2009 WL 10708297, at *2 (D.N.M. Mar. 26, 2009). Rather, he essentially alleges that he was fired unfairly because his employer did not listen to him or communicate with him during the investigation process.

To the extent Mr. Bradley discusses voicing his concern that discrimination was at issue, Doc. 1 at 17, it is unclear whether he also is arguing that he was wrongfully discharged because of his race or in retaliation for the complaint of racism or whether this statement is simply part of the narrative of events. "While pleadings are to be liberally construed by New Mexico's courts, we will not read into a complaint a cause of action that is not stated." *Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 23, 312 P.3d 681, 687. The substance of Mr. Bradley's statement of facts suggests that his wrongful discharge claim is based solely on perceived procedural issues with the sexual harassment investigations; I do not recommend that the Court read additional allegations into this claim where Mr. Bradley has not communicated them clearly.

Apart from alleging deficiencies, Mr. Bradley also has brought no evidence that he faced discharge for performing an act that public policy encourages or refraining from doing something that public policy condemns. At the summary judgment stage, such evidence is required. Accordingly, I recommend that the Court GRANT summary judgment in Amazon's favor on this claim.

**CONCLUSION**

For the reasons discussed above, I recommend that the Court GRANT Amazon's motion for summary judgment (Doc. 74) in its entirety.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.**

---

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE

14